IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Crim. No. 13-35-LPS |
| | ) |
| KENNETH MICHAEL BROPHY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Pending before the Court in this criminal matter are numerous pretrial motions, as well as the parties' request for the Court to determine certain jury instructions in advance of trial.

## BACKGROUND

A grand jury returned a three-count indictment against Defendant Kenneth Michael Brophy ("Brophy" or "Defendant") on April 2, 2013. (D.I. 25, 26) ("Indictment" or "Ind.") The Indictment alleges that between November 2008 and May 2010, Brophy was employed by the United States Department of State ("State Department") as a personal service contract employee for the Bureau of International Narcotics and Law Enforcement ("INL") at the United States Embassy in Kabul, Afghanistan ("Embassy"). (Ind. ¶ 1)

In particular, Brophy supervised Company #1, an Afghan contracting firm specializing in architectural and engineering design, in relation to certain INL contracts. (*Id.* ¶ 4) Specifically, Company #1 was the prime contractor on multiple U.S. government contracts, including two United States Army Corps of Engineers ("USACE") contracts relating to design and construction of Afghan police headquarters facilities. (*Id.* ¶ 5) These two USACE contracts were worth a

total of more than $7 million. (*Id.*) Between August 2008 and April 2009, the USACE issued multiple suspension-of-work, show-cause, and other letters to Company #1 regarding unsatisfactory performance on the contracts; ultimately, USACE terminated both contracts in April 2009. (*Id.* ¶ 6) Company #1 then appealed both terminations, first within the USACE and subsequently to the Armed Services Board of Contract Appeals. (*Id.*) Eventually, Company #1 and the USACE settled the claims for approximately $500,000. (*Id.*)

The Indictment alleges that between January and December 2009, Brophy undertook various actions to assist Company #1 in its efforts to appeal the termination of its contracts with the USACE. (*See, e.g.* Ind. ¶ 11) Among other things, Brophy allegedly told a USACE official he was pleased with Company #1's performance, helped Company #1 with its appeal, and submitted a letter to the Chief Consul, Visa Services, Consular Office, at the Embassy – on official Embassy letterhead – using his official title and recommending that Company #1's owner be issued a visa to travel to Washington, DC. (*Id.*) The Indictment further alleges that, in August or September 2009, Brophy received $30,000 in cash from Company #1's owner. (*Id.*)

The Indictment charges Brophy with the following criminal offenses: (1) conspiracy, in violation of 18 U.S.C. § 371; (2) receipt by a public official of an illegal gratuity, in violation of 18 U.S.C. § 201(c)(1)(B);[1] and (3) receipt by a government employee of an illegal payment for

---

[1] 18 U.S.C. § 201(c)(1)(B) provides: "Whoever . . . otherwise than as provided by law for the proper discharge of official duty . . . being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of any official act performed or to be performed by such official or person . . . shall be fined under this title or imprisoned for not more than two years, or both."

assisting with a claim against the government, in violation of 18 U.S.C. §§ 205(a)(1)[2] and 216(a)(2).

In May and June 2013, Brophy filed numerous pretrial motions.[3] With the Court's consent, the parties also filed their proposed jury instructions relating to several material legal disputes that have arisen between them. (*See* D.I. 49) On July 10, 2013, the Court held a hearing on the pending motions and the proposed jury instructions.[4] *See* Transcript (D.I. 77) ("Tr."). A pretrial conference is scheduled for September 19 and trial is set to commence on September 30. (D.I. 49)

## DEFENSE MOTIONS[5]

<u>Motion to Strike Allegations of Indictment</u> (D.I. 35)

Brophy seeks to strike the allegations in the Indictment that he was a government

---

[2] 18 U.S.C. § 205(a)(1) provides: "Whoever, being an officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States, other than in the proper discharge of his official duties . . . acts as agent or attorney for prosecuting any claim against the United States, or receives any gratuity, or any share of or interest in any such claim, in consideration of assistance in the prosecution of such claim . . . shall be subject to the penalties set forth in section 216 of this title [i.e., 18 U.S.C. § 216(a)]."

[3] The government filed a Notice of Intent to Offer Into Evidence Under Federal Rule of Evidence 902(11) Certain Certified Records of Regularly Conducted Activity. (D.I. 38) The parties advised the Court at the hearing that there is no dispute for the Court to resolve with respect to this Notice. (Tr. at 26)

[4] On August 16, Defendant filed a motion in limine to determine admissibility of excerpts from a GAO Report and State Department Response. (D.I. 74) On August 29, Defendant filed a supplemental request for a jury instruction. (D.I. 79) Because the government has not yet had an opportunity to respond to these two filings, the Court does not address them here.

[5] Many of the motions present the same issues. Unless otherwise noted, the Court's resolution of an issue raised by a particular motion applies to all motions (and jury instructions) presenting the same issue.

"employee" within the meaning of the statutes pursuant to which he is being prosecuted. As grounds he cites equal protection, improper delegation of legislative power to executive agencies, and void for vagueness doctrine. (*See* D.I. 35 at 1, 5; D.I. 65 at 4-5; Tr. at 7 ("You cannot have each agency free to define an element of a criminal violation as it sees fit by fiat because that is called a denial of equal protection, and that would be called void for vagueness."))

The Court agrees with the government that Defendant's motion is, in essence, a motion to dismiss Count 3 of the Indictment, as well as the portions of Count 1 that are based on Section 205. (D.I. 44 at 2 n.1) As such, the applicable legal standards are well-settled:

> [A]n indictment is facially sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. . . . Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred. . . .
>
> . . . Federal Rule of Criminal Procedure 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings to . . . ensur[e] that legally deficient charges do not go to a jury. . . . [T]he Government is not required to set forth its entire case in the indictment . . . . [Hence,] the scope of a district court's review at the Rule 12 stage is limited. [A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. . . . In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment. . . . Thus, a district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he

4

was charged.

*United States v. Huet*, 665 F.3d 588, 595-96 (3d Cir. 2012) (internal quotation marks and citations omitted). Applying these standards, the Court concludes that Defendant's motion to strike must be denied.[6]

All of Brophy's challenges to treatment of him as a government "employee" for purposes of Section 205 are premised on a single assertion: that the only applicable definition of "employee" is that set out in 5 U.S.C. § 2105(a). In Brophy's view, Section 2105 limits the definition of government "employee" to those who are "appointed in the civil service." Since it is undisputed that Brophy was not appointed in the civil service, it follows under Brophy's reasoning that at least portions (if not the entirety) of Counts 1 and 3 have to be stricken (and/or dismissed). (D.I. 65 at 5; Tr. at 5)

Section 2105(a) provides:

> For purposes of this title, "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is –
>
> > (1) appointed in the civil service by one of the following acting in an official capacity –
> >
> > > (A) the President;
> > >
> > > (B) a Member or Members of Congress, or the Congress;
> > >
> > > (C) a member of uniformed service;
> > >
> > > (D) an individual who is an employee under this section;
> > >
> > > (E) the head of a Government controlled corporation; or

---

[6] A subsequently-filed memorandum in support of this motion is docketed as a motion. (D.I. 55) For the same reasons given above, this subsequent "motion" will also be denied.

> > (F) an adjutant general designated by the Secretary . . . .;
>
> > (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
>
> > (3) subject to the supervision of an individual named in paragraph (1) of this subsection while engaged in the performance of the duties of his position.

As is evident from the plain language of the statute, however, Section 2105 does not apply to this criminal prosecution. Section 2105 begins with the clause "***For purposes of this title***," that is, Title 5. Section 2105 on its face does ***not*** apply to Title 18, which sets out the criminal statutes pursuant to which Brophy is being prosecuted. Hence, while Section 2105 may require that an individual be "appointed in the civil service" in order to be considered an employee for purposes of Title 5, that requirement is not thereby applicable to 18 U.S.C. § 205.[7]

Additionally, the government persuasively argues that Section 2105 cannot define the full scope of who is an employee for purposes of Section 205 because, otherwise, Section 205 would be drastically under-inclusive. The State Department also hires individuals as part of the Foreign Service, not the Civil Service. (*See* Tr. at 35-36) If Defendant's position regarding Section 2015 were adopted, it would follow that individuals hired into the Foreign Service would never be

---

[7] *See also generally* 22 U.S.C. § 2669(c) (providing that "Secretary of State may use funds . . . to employ individuals . . . by contract, for services abroad," adding that "individuals employed by contract to perform such services shall not by virtue of such employment be considered to be employees of the United States Government ***for purposes of any law administered by the Office of Personnel Management***," subject to exceptions not pertinent here) (emphasis added). The provisions of Title 18, including the criminal statutes under which Brophy is being prosecuted, are not "law[s] administered by the Office of Personnel Management." *See generally Miller v. Clinton*, 687 F.3d 1332, 1343 (D.C. Cir. 2012) (explaining that ADEA is not law administered by OPM).

government "employees" for purposes of Title 18, and thus would be exempt from the criminal conflict-of-interest statutes, including Section 205. This cannot be correct.

In support of his contrary conclusion, Brophy relies on two documents prepared by other government entities: an opinion letter from the Office of Government Ethics ("OGE") dated June 28, 2007 (D.I. 35 Ex. A; D.I. 56 at 11-16) ("OGE Letter"), and a 2002 opinion of the Office of Legal Counsel ("OLC"), a component of the Department of Justice ("DOJ") (D.I. 56 at 18-25). OLC appears to have concluded that in order to be deemed an "employee" for purposes of the conflict of interest laws set out in Title 18 – including the criminal statutes under which Brophy is being prosecuted – it is necessary to apply the three-part test set out in Section 2105(a). Brophy contends, therefore, that because he does not satisfy this three-part test, he is not an employee.

The Court rejects Brophy's contention, for reasons including those already given above. In addition, while the OGE and OLC documents make reference to Title 18, there is no indication that either the OGE or OLC were considering whether the criminal provisions of Title 18 were to be limited only to employees who are appointed within the Civil Service. It is far from clear that modifying Section 2105's three-part test to eliminate merely the limitation to Civil Service employees would "dilute" the test, flout the rule of lenity, or be in any way inconsistent with the reasoning of the OGE and OLC drafters.

As the Supreme Court has explained, the criminal conflict-of-interest statutes are "merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 409 (1999). This fact makes it all the more

unreasonable to read the OGE and OLC documents as providing a single, all-encompassing, dispositive test for determining who is an "employee."

Defendant's challenges based on equal protection, delegation of legislative power, and void-for-vagueness doctrine all fail as a result of the foregoing analysis. Brophy's equal protection argument is: "if [Section] 2105 does not define 'employee' then the OGE opinion that ultimately different agencies of the Executive Branch are free to define the term 'employee' as they see fit means that similarly situated individuals can be deemed 'employees' or not depending on the agency they worked for." (D.I. 65 at 2) In fact, however, while each agency may have its own view as to which individuals are "employees," for purposes of a criminal trial this determination will be made by a jury, guided by proper instructions from the Court, based on the evidence presented. For this reason, too, there is no improper delegation to the executive branch. Relatedly, Section 205 is not void for vagueness because it "allow[s] a person of ordinary intelligence to determine what conduct it prohibits" and does not "authorize[] arbitrary enforcement." *J.S. ex rel. Snyder v. Blue Mountain School Dist.*, 650 F.3d 915, 935 (3d Cir. 2011); *see also* D.I. 65 at 3.[8]

The Court will further address the definition of "employee" in the context of the parties' competing jury instructions.

---

[8]Defendant also makes reference to the rule of lenity, arguing that criminal statutes "are to be strictly construed against the Government." (D.I. 35 at 4) However, the "canon in favor of strict construction [of criminal statutes] . . . does [not] demand that a statute be given the narrowest meaning; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers." *Dixson v. United States*, 465 U.S. 482, 501 n.18 (1984) (internal quotation marks omitted). The Court's resolution of the parties' disputes gives the words of the statutes involved here their fair meaning in accordance with congressional intent.

Rule 12(b)(2) Motion to Determine Questions of Law Prior to Trial (D.I. 37)

The government agrees with Brophy that the Court should determine certain questions of law prior to trial. (D.I. 45; D.I. 58 at 1-2) As is evident, the Court agrees as well. Hence, Brophy's motion will be granted.[9]

Rule 12(b)(4)(B) Motion for Notice of Intent to Use Evidence (D.I. 43)

The government has provided Defendant the notice he seeks. (D.I. 46) Hence, Brophy's motion will be denied as moot.

Motion to Strike Paragraph 3 of the Indictment (D.I. 50)

Brophy moves pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) to strike paragraph 3 of the Indictment. Paragraph 3 alleges that Brophy was an "officer or employee" of the government within the meaning of Section 205(a)(1). Brophy's request for relief is based on his position "that the term 'employee' used in each Statute is as defined in 5 U.S.C. § 2105." (D.I. 50 at 2-3) For reasons already explained, the Court disagrees with Defendant's definition of employee. Accordingly, the Court will deny Defendant's motion to strike.[10]

Moreover, to the extent this motion is viewed as a motion to strike surplusage, *see* Fed. R. Crim. Proc. 7(d) ("Upon the defendant's motion, the court may strike surplusage from the indictment or information."), it again lacks merit. Allegations are stricken as surplusage only

---

[9]Were the Court to decline to resolve these issues, they would almost certainly arise on Defendant's motion for a judgment of acquittal at the conclusion of the government's case-in-chief, and their resolution at that time might considerably delay completion of trial. (*See* D.I. 37 at 4)

[10]A subsequently-filed memorandum in support of this motion is likewise docketed as a motion. (D.I. 54) For the same reasons given above, this subsequent "motion" will also be denied.

when they are "both irrelevant (or immaterial) and prejudicial." *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006). This "rarely" occurs. *Id.* at 611.

Brophy makes no specific argument as to prejudice. Nor has he shown that the allegations of paragraph 3 – which contend that he was a government "employee" – are irrelevant or immaterial. To the contrary, the government intends to prove that Brophy was an "employee," and "matters which the government in good faith intends to prove at trial to establish the charge cannot be stricken as surplusage." *See United States v. Wecker*, 620 F. Supp. 1002, 1007 (D. Del. 1985).

Motion Seeking Bill of Particulars (D.I. 51)

The Court will deny Brophy's request for a bill of particulars. "The purpose of a bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 165 (2012); *see also* Fed. R. Crim. Proc. 7(f).

The detailed Indictment and the extensive discovery provided by the government together give Brophy with sufficient notice of the charges he must meet at trial. *See United States v. Urban*, 404 F.3d 754, 759-61 (3d Cir. 2005) ("[A]ccess to discovery further weakens the case for a bill of particulars . . . ."). The government has provided further particularity through the briefing and argument on the pretrial motions. (*See, e.g.*, Tr. at 60 (government confirming that it does not intend to prove overt acts or official acts beyond those referenced in Indictment)) Finally, the Court's rulings, including on the disputed jury instructions, give Defendant additional notice as to what he will face at trial, providing further protection against unfair

surprise.

Motion to Produce Discovery (D.I. 52)

Consistent with the parties' agreement (Tr. at 26-27), the Court will deny Brophy's discovery motion without prejudice to renew.

Motion to Determine Definitions of Certain Terms Alleged in Indictment Prior to Trial (D.I. 53)

To the extent this motion asks the Court to define "employee" or "public official" (or its component parts), the Court has done or will do so elsewhere in this Memorandum Order, in connection with Defendant's motion to strike and the jury instructions. To the extent this motion asks the Court to consider the applicable definition of "official act," "official duty," and "official capacity," the Court will do so here.

Pursuant to 18 U.S.C. § 201(a)(3), "the term 'official act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." Defendant argues that the government seeks to hold him criminally liable for conduct that is outside the scope of the criminal statutes under which he has been indicted because, in Defendant's view, he is not alleged to have taken any official act within the scope of his job duties. Defendant contends that to be an official act, the issue in question must be pending before the official defendant himself; it is not sufficient that the issue be pending before some government agency.

Defendant is not correct. *See United States v. Heffler*, 402 F.2d 924, 926 (3d Cir. 1968) (stating that bribery statute "is applicable to a situation where the advice and recommendation of the Government employee involved would be influential . . . even though the employee did not

have the authority to make the final decision"); *see also United States v. Ring*, 706 F.3d 460, 466 (D.C. Cir. 2013); *United States v. Carson*, 464 F.2d 424, 433 (2d Cir. 1972) ("There is no doubt that federal bribery statutes have been construed to cover any situation in which the advice or recommendation of a Government employee would be influential, irrespective of the employee's specific authority (or lack of same) to make a binding decision."). Thus, while Defendant argues that "[i]f you are not acting within your legal authority or pursuant to clearly settled practice, then you really can't be committing an official act" (Tr. at 17), the Court disagrees.

The allegations here are unlike those in *Valdes v. United States*, 475 F.3d 1319, 1322 (D.C. Cir. 2007) (*en banc*), in which a government employee's "moonlighting" activity – reviewing publicly available databases to assist private actors – was found to be outside the scope of "official acts" as defined in the conflict-of-interest statutes. Here, by contrast, the actions Brophy is alleged to have involved himself with – for example, advising a government entity as to the quality of Company #1's work, recommending the issuance of a travel visa for Company #1's president – are official acts within the authority of some government officials. *See Ring*, 706 F.3d at 469-70 (affirming conviction based on DOJ attorney's attempt to expedite State Department's review of visa application, a matter outside of the attorney's authority but within the scope of a State employee's authority); *see also* Tr. at 29-30 (government arguing that Valdes "was doing something that was not, as the language requires, a class of questions or matters whose answer for disposition is determined by the Government"). In *Ring*, as here, and unlike in *Valdes*, "the attorney [or, here, Brophy] was neither 'moonlighting' nor making a purely informational inquiry. Rather, the attorney [or, here, Brophy may have] acted in his official capacity to *influence* the . . . [decisionmaking] process." *Ring*, 706 F.3d at 470 (internal citation

omitted). Like *Ring*, Brophy's "attempt to import a requirement that the official in question have ultimate decisionmaking authority into the definition of 'official act' has no statutory basis." *Id.*

The Court will further consider the definition of "official act" in the context of jury instructions.

Motion to Compel Discovery (D.I. 75)

On August 26, Brophy filed a Motion to Compel, which "revive[s]" his earlier discovery motion and seeks to compel the government to produce additional discovery. (D.I. 75) The government responded and Defendant has replied. (D.I. 78; D.I. 80) As Defendant has agreed to "await the Government's provision of . . . [certain] e-mails before presenting further argument to the Court," the first portion of Brophy's motion will be denied without prejudice. Brophy's other request will be granted. The government shall respond specifically to each item requested as to whether such materials are in the government's possession and, if so, the grounds on which the government contends they are not discoverable.

## JURY INSTRUCTIONS

The Court agreed with the parties that the most appropriate way of presenting several of their disputes in a pretrial context was to provide the Court with their competing versions of jury instructions. (*See* D.I. 62; D.I. 68; D.I. 69; D.I. 70; D.I. 71) The Court's determinations as to the proper jury instructions largely follow from the rulings already provided throughout this Memorandum Order.

The parties agreed to the instructions to be provided with respect to Count 1. (D.I. 62 at 2; D.I. 68 at 1-2) The Court will adopt the parties' jointly-proposed instructions.

With respect to Count 2, the government proposes that the Court use the Third Circuit

13

Model Criminal Jury Instruction ("Model"). (D.I. 68 at 2-3) The Court will largely do so. The Court does not agree with Defendant that the Model instructions "are overly general, not specifically precise and will not give a jury the guidance it needs in this matter." (D.I. 62 at 1)

In particular, with respect to the elements of the offense, the Court agrees with the government that the Model is more complete than Defendant's proposal and in no respect inappropriate. (D.I. 68 at 3) (citing Model 6.18.201C1B) With respect to the definition of "public official," the Court again agrees with the government that the model instruction is more complete than Defendant's proposal. (*Id.*) (citing Model 6.18.201B1-1[11])

The parties' dispute as to the proper jury instruction regarding the definition of "employee" is the same dispute already addressed in connection with the motion to strike. Consistent with his position in that motion, Brophy proposes the following jury instruction:

> For the purpose of Count 2 of the indictment an "employee" is someone appointed in the Civil Service of the United States subject to certain other conditions which are unimportant here. It is undisputed that Brophy was not appointed to the Civil Service during the time of the acts alleged in this case. Therefore, Brophy did not act as an employee in this case.

(D.I. 62 at 4; *see also id.* at 8 (proposing same definition of "employee" with respect to Count 3))[12] The government's position, by contrast, is that "[t]o the extent a definition of 'employee' is

---

[11]Model 6.18.201B1-1, as modified to the facts here, provides: "The term 'public official' means an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of the United States Government, in any official function, under or by authority of any such department, agency, or branch of government. The term 'public official' includes any employee of the United States Government as well as any person who is performing work for or acting on behalf of the United States Government."

[12]While Brophy would have the Court predetermine for the jury whether he was an employee, the Court agrees, instead, with the government that it is for the jury to determine –

14

needed, the government requests that the jury be instructed that that term is meant to be understood in its ordinary, common sense meaning." (D.I. 68 at 6) Alternatively, the government would agree to the language from Section 2105, without the reference to civil service: "an 'employee' is a person (1) appointed by a Federal officer or employee, (2) engaged in the performance of a Federal function under authority of law, and (3) is subject to the supervision of a Federal officer or employee." (*Id.* at 7; Tr. at 35) The government has variously submitted other proposals for instructing the jury on the definition of "employee," basically collecting factors considered under common law and in connection with disputes as to whether an individual is an employee or independent contractor. (*See* D.I. 68-1 at 3; D.I. 69)

Having considered the parties' proposals, the Court has crafted an instruction derived almost entirely from the government's proposals and the authorities to which the government cited in its proposals.[13] Specifically, the Court will instruct the jury as follows with respect to the

---

based on proper instructions – whether he was an employee, after the presentation of evidence. *See generally Chin v. United States*, 57 F.3d 722, 725 (9th Cir. 1995) ("The determination of an individual's status as an employee or an independent contractor for tax purposes involves a mixed question of law and fact that is predominantly one of fact . . . ."); *United States v. Campbell*, 798 F. Supp.2d 293, 309-10 (D.D.C. 2011) (denying without prejudice as premature a motion to dismiss solicitation of a bribe count based on challenge to accuracy of allegations as to defendant's employee status).

[13]The Court agrees with the government that the applicable definition of "employee" for purposes of these criminal statutes is essentially an everyday, common usage of the term. *See United States v. Tirouda*, 394 F.3d 683, 688-89 (9th Cir. 2005) ("Whether a term in a jury instruction requires definition normally turns on whether it expresses a concept within the jury's ordinary experience. No prejudice results from a district court's failure to define a concept within the comprehension of the average juror.") (internal quotation marks omitted); *United States v. Walker*, 912 F. Supp. 655, 658 (N.D.N.Y. 1996) ("A jury should be instructed that the terms 'organizer, supervisor or manager' should be given their everyday, ordinary meaning, implying the exercise of power or authority by a person who occupies some position of a management or supervision."). Nonetheless, under the circumstances, it is also appropriate here to give the jury (and the parties) guidance as to some of the specific factors that may be relevant

definition of "employee":

>One of the questions you will have to answer is whether the Defendant was an "employee" of the United States government. There is no single factor that will answer this question. Instead, you should apply your common, everyday understanding of what is, and is not, an "employee."
>
>One set of factors you might consider in determining whether the Defendant was an employee of the United States is whether: (i) he was appointed by another government employee acting in an official capacity, (ii) he was engaged in the performance of a federal function under authority of law or an Executive act, and (iii) he was subject to the supervision of a government employee while engaged in the performance of the duties of his position.
>
>In determining whether a hired party is an employee of the United States government, you may also consider the right of the hiring party, the government, to control the manner and means by which the product is accomplished. Factors you may consider relevant to this inquiry as to whether the Defendant was an employee are: the skills required, the source of the instrumentalities and tools, the location of the work, the duration of the relationship between the parties, the contractual relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistants, whether the work is part of the regular business of the hiring party, whether the services are applied directly to the integral effort of a government organization in furtherance of an assigned function or mission, the provision of employee benefits, and the tax treatment of the hired party.
>
>You should also consider whether the Defendant, instead of being an "employee" of the United States, was an independent contractor with respect to his work for the Department of State. Factors that would indicate independent contract status include: the worker's right to hire, supervise, and pay assistants; the worker pays his own business and/or travel expenses; the worker furnishes

---

to making this determination.

>his own tools; the worker has significant investment in his business operations; the worker realizes a profit or loss from his work; the worker has the right to work for more than one entity at a time; the worker has the right to make his services available to the general public; and the worker has the right to terminate his relationship with the government without incurring liability.
>
>Again, no one of these factors is determinative. Also, the titles or labels used by the parties are not controlling.

*See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989); 48 C.F.R. § 37.104(c) & (d); 5 U.S.C. § 2105(a); Eleventh Circuit Pattern Jury Instructions (Civil Cases) Instruction No. 10.3 (2005); Fifth Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 12.3 (2006).

With respect to Count 2, the Court further agrees with the government that the proper instructions defining "acting for or on behalf of the United States" and "official act" are those embodied in the Model instructions, with common, ordinary meanings applied to terms within these instructions. (D.I. 68 at 7) (citing Model 6.18.201B1-1 and 6.18.201B1-2[14])

With respect to Count 3, the Court agrees that the government's proposed instruction as to the elements of Section 205(a)(1) and 216(a)(2) is complete and accurately states the law. (D.I. 68 at 8; D.I. 68-1 at 4) For the definition of "gratuity" in the context of the Section 205 count, the Court agrees to use the government's proposed definition: "a material favor or gift

---

[14]Model 6.18.201B1-2 provides: "The term 'official act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust. The government must prove that [Defendant] intended to influence a specific act or acts. The term 'official act' includes the decisions or actions generally expected of the public official. These decisions or actions do not need to be specifically described in any law, rule, or job description to be considered to be an 'official act.'"

usually in the form of money, given in return for service; alternatively, a tip." (D.I. 68 at 8-9)

Finally, the Court agrees with the government that Defendant's proposed "impossibility" defense instruction is confusing and legally unsupported. (*Id.* at 9-10) *See generally United States v. Hsu*, 155 F.3d 189, 199-203 (3d Cir. 1998) ("[L]egal impossibility is not a defense to conspiracy."). The instructions the Court will provide the jury will make clear both the government's burden and the essential elements the government must prove as to each offense charged. The jury will be fully instructed that if the government fails in any respect to meet its burden, the jury cannot convict Defendant. These instructions will provide Defendant the protection he appears to be aiming at with his proposed impossibility instruction.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Strike Allegations of Complaint (D.I. 35; D.I. 55) is DENIED.

2. Defendant's Motion to Determine Questions of Law Prior to Trial (D.I. 37) is GRANTED.

3. Defendant's Motion for Notice of Intent to Use Evidence (D.I. 43) is DENIED AS MOOT.

4. Defendant's Motion to Strike Paragraph 3 of the Indictment (D.I. 50; D.I. 54) is DENIED.

5. Defendant's Motion for Bill of Particulars (D.I. 51) is DENIED.

6. Defendant's Motion to Produce Discovery (D.I. 52) is DENIED WITHOUT PREJUDICE.

7. Defendant's Motion to Determine Definitions of Certain Terms (D.I. 53) is

GRANTED.

8. Defendant's Motion to Compel Discovery (D.I. 75) is DENIED WITHOUT PREJUDICE with respect to the issue of the e-mail search and GRANTED to the extent that the government shall, **no later than September 6, 2013**, respond specifically to each item requested as to whether any such materials are in the government's possession and, if so, the grounds on which the government believes they are not discoverable.

9. The government is directed to submit, on behalf of both parties, a form of jury instructions implementing the Court's rulings in this Memorandum Order and also containing all of the agreed-upon instructions. Any remaining disputes as to jury instructions should be noted in the government's submission and will be addressed by the Court at a later date. The government's submission is due on or before **September 16, 2013**.

August 30, 2013
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE